# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., | Case No. 1:12-cv-1508-AWI-BAM |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT |
| v. | |
| RUBEN GARCIA ARANDA d/b/a EL CACHANILLA POOL HOUSE, | |
| Defendant. | |

## INTRODUCTION

On March 26, 2013, J&J Sports Production, Inc. ("Plaintiff") filed the present motion for default judgment against Defendant Ruben Garcia Aranda a/k/a/ Ruben Garcia d/b/a El Cachanilla Pool House ("Defendant"). (Doc. 11). The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for May 3, 2013. Having considered the moving papers, and the Court's file, the Court GRANTS Plaintiff's motion for default judgment IN PART and judgment will be entered in the amount of $3,200.00 against Defendant.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, a distributor of sports and entertainment programming, alleges that it owns commercial distribution rights to broadcast the closed-circuit program *Star Power: Floyd Mayweather, Jr. v. Victor Ortiz, WBO Welterweight Championship Fight Program* ("the Program"), telecast nationwide on September 17, 2011. *See* Compl. ¶ 14. The Program included the main event between Floyd Mayweather, Jr. and Victor Ortiz, along with undercard bouts, televised replay, and color commentary. *Id.* Plaintiff alleges that the Program was unlawfully intercepted and exhibited by Defendant at his commercial establishment, El Cachanilla Pool House ("El Cachanilla"), located at 1501 Tulare Street in Fresno, California. *Id.* ¶ 17. Plaintiff alleges that the interception and exhibition of the Program was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain. *Id.* ¶ 18.

On September 13, 2012, Plaintiff filed this action alleging violations of the Federal Communications Act of 1934, as amended, 47 U.S.C. § 605 and 47 U.S.C. § 553, as well as of violations of California law against conversion and California Business and Professions Code §17200.

The Summons and Complaint were served upon Defendant Ruben Garcia by personal service on November 25, 2012. (Doc. 7). True and correct copies of the Proof of Service were filed with this Court on December 7, 2012. On December 19, 2012, after Defendant failed to file an answer, Plaintiff requested an entry of default against Defendant, which was entered by the clerk on January 16, 2013. (Doc. 9). On March 26, 2013, Plaintiff filed the instant motion for default judgment. (Doc. 11). Plaintiff's motion requests that the Court enter default judgment against Defendant for damages in the amount of $112,200.00. (Doc. 11-4). Defendant has not appeared or otherwise defended this action, including the motion for entry of default judgment.

## LEGAL STANDARD

Where a defendant has failed to respond to the complaint, the court presumes that all well-pleaded factual allegations relating to liability are true. *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th

Cir. 1987). Therefore, when determining liability, a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact. *See Panning v. Lavine*, 572 F.2d 1386 (9th Cir. 1978). While factual allegations concerning liability are deemed admitted upon a defendant's default, the court does not presume that any factual allegations relating to the amount of damages suffered are true. *See Geddes*, 559 F.2d at 560; *TeleVideo Sys., Inc.,* 826 F.2d at 917-18. The Court must ensure that the amount of damages awarded is reasonable and demonstrated by the evidence. FED. R. CIV. P. 55(b)(2)(C)*; Geddes*, 559 F.2d at 560*; TeleVideo Sys., Inc.,* 826 F.2d at 917-18.

With the entry of default in the case at hand, this Court may accept the factual allegations of Plaintiff's complaint as true to assess liability. The complaint alleges that Defendant and/or his employees, with knowledge that the boxing program was not to be intercepted, unlawfully exhibited the Program at the establishment. The complaint is sufficiently plead, indicating the substantive merit of Plaintiff's claim, *i.e.*, unauthorized exhibition of the Program. Defendant's failure to contest this action demonstrates absence of a dispute as to material facts. There is no evidence the default resulted from excusable neglect since the service of the complaint is in order. Accordingly, the only issue remaining is an award of damages.

## DISCUSSION

Plaintiff requests damages in the amount of $110,000.00 for alleged violations of 47 U.S.C. sections 605(e)(3)(C)(i)(II) (statutory damages) and (C)(ii) (enhanced statutory damages) and $2,200.00 for tortious conversion, for a total of $112,200.00 in damages.[1]

The Federal Communications Act of 1934, 47 U.S.C. § 605 *et seq*. prohibits commercial establishments from intercepting and broadcasting satellite cable programming without a license. It provides a private right of action in federal court. Plaintiffs may request that courts award actual or statutory damages between $1,000 and $10,000 for each violation of section 605. 47 U.S.C. § 605(e)(3)(C)(I). Damages of up to $100,000 may be awarded for willful violations. 47 U.S.C. § 605(e)(3)(C)(ii).

---

1  Plaintiff's complaint alleges that Defendant displayed the Program in violation of 42 U.S.C. Section 605, *et seq*, and Title 47 U.S.C. Section 553. Plaintiff further alleges that Defendant committed the tort of Conversion and violated California Business and Professions Code Section 17200. However, in its motion for default judgment, Plaintiff seeks relief on only two of the four causes of action: 47 U.S.C. Section 605 and Conversion.

3

**A.    Statutory Damages pursuant to 47 U.S.C. 605(e)(3)(i)(II)**

Under 47 U.S.C. § 605(e)(3), the Court may award statutory damages between $1,000 and $10,000 for a violation of the Act. Plaintiff contends that the maximum award against Defendant is necessary to deter future violations. (Doc. 11-1 at 11).

Plaintiff presents the following evidence in support of its request for damages. Defendant's establishment is a small commercial pool hall with two pool tables and a maximum capacity 100 persons. On September 17, 2011, the day of the Program, Lawrence K. Brookter, an investigator from Brookter Investigation Services observed the Program airing at Defendant's commercial establishment. (Doc. 11-3); (*See* Declaration of Affiant Lawrence Brookter ("Brookter Decl."), Doc. 11-3). Mr. Brookter reported that he entered El Cachanilla Pool House at approximately 8:14 p.m. on September 11, 2011 without paying a cover charge. (Brookter Decl. at 2). Mr. Brookter indicated that he saw the Program broadcasting inside the pool hall on a 20-inch Vizio Television. Mr. Brookter states that the maximum occupancy of El Cachanilla is approximately 100 people, and he counted twenty to twenty-five people in the pool hall at the time of the Program. While El Cachanilla does serve food, it does not appear to be a dining establishment. Mr. Brookter notes that no alcohol was being served and El Cachanilla is primarily "just a pool hall with two pool tables." *Id.* at 2. When Mr. Brookter exited the establishment at approximately 8:35 p.m., approximately 25 people were present. Mr. Brookter indicated that some of those present were eating and others were watching the fight. *Id.* Finally, Mr. Brookter noted that El Cachnilla is "in a crime ridden section of downtown Fresno infested with drug addicts and prostitution." (Doc. 11-3). Photographs of the establishment depict a older, poorly maintained building. (Doc. 11-3, exhibits).

The Court should not award the statutory maximum damages award "in the absence of unusual or particularly egregious circumstances under which a defendant broadcast the fight." *Don King Productions/Kingvision v. Maldonado*, 1998 U.S. Dist. LEXIS 20165, 1998 WL 879683 (N.D. Cal. December 11, 1998)(No. C-97-3530 WHO MED), *citing Joe Hand Promotions v. Burg's Lounge*, 955 F.Supp. 42, 44 (E.D. Pa. 1997). Here, while El Cachanilla has a maximum capacity of 100 persons, the largest number present while the Program was displayed is 25. Mr. Brookter indicated that only some of those 25 patrons were watching the Program, and those who were

4

watching were viewing the Program on a tiny 20 inch television displayed behind a counter. Nothing in the record even mildly suggests that Defendant experienced any significant "commercial advantage or private financial gain" as a result of its airing the Program.

Absent evidence of commercial advantage or financial gain, district courts have awarded the statutory minimum where the defendants were first-time offenders in establishments of similar or larger size. *See Joe Hand Promotions, Inc. v. Williams*, 2011 U.S. Dist. LEXIS 138247 (E.D. Cal. Nov. 30, 2011) (providing an expansive review of California statutory and enhanced statutory damage awards); *see also, e.g., J & J Sports Productions, Inc. v. Cardoze*, 2010 U.S. Dist. LEXIS 74606, 2010 WL 2757106 (N.D. Cal. July 9, 2010) (No. C 09-05683 WHA) (setting statutory damages of $1000 and enhanced damages of $250 in bar and grill with capacity of 150 people, and seven television sets where 37 to 45 people were present while bout was broadcast); *J & J Sports Productions, Inc. v. Rodriguez*, 2010 U.S. Dist. LEXIS 20288, 2010 WL 796942 (E.D. Cal. March 5, 2010) (No. CIV S-08-1140 JAM DAD) (setting statutory damages of $1000 and enhancements of $4000 for taqueria with seating capacity of 30 and 16 to 20 patrons during showing of bout); *J & J Sports Productions, Inc. v. Gamino*, No. 1:11-cv-1056-AWI-BAM, 2012 U.S. Dist. LEXIS 36047, 2012 WL 913743 at * 5 (E.D. Cal. March 16, 2012) (recommending statutory damages of $1,000 where restaurant sat 75 people and 12 persons were present during the Program's broadcast)

The Court will not recommend that Plaintiff's request for an award of the statutory maximum be ordered. While Plaintiff's memorandum refers to several decisions in this and other districts that granted larger awards (Doc. 11 at 14), in most of those decisions, the damages awarded were substantially reduced from the amount requested due to the "small impact" of the defendants' actions. Here Plaintiff, cannot and does not argue that Defendant's violation made a large impact. The Program was viewed on one small television, making the violation de minimis. In the Court's discretion, this factor weighs heavily in reducing the damages award. Further, El Cachnilla holds a maximum of one-hundred people, with no more than twenty-five present during Mr. Brookter's head count. No cover charge was required, no alcohol was served, and the Program was shown on a 20 inch television. These factors suggest that maximum damages are unwarranted. The Court recommends that minimum statutory damages be awarded at $1,000.00.

**B.     Enhanced Damages pursuant to 47 U.S.C. 605(e)(3)(C)(ii)**

Plaintiff seeks enhanced damages under 47 U.S.C. § 605(e) (3)(C)(ii), which provides for an enhanced damage award of up to $100,000.00 when "a violation was committed willfully and for purposes of direct or indirect commercial advantage or financial gain." 47 U.S.C. 605(e)(3)(C)(ii). Plaintiff alleges that Defendant's interception of the program was willful and for purposes of commercial advantage or private gain. Compl. ¶ 18.

Courts that have awarded enhanced damage awards due to willful violations of the Communications Act have cited such factors as the repeated violation of the Act, the intent to profit from the violations and actual profit derived from the violation. *Kingvision Pay-Per-View Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1197 (N.D. Cal. 2000).

Plaintiff contends that it is entitled to enhanced damages even though it alleges nothing more than that Defendant aired the program. Although El Cachanilla can hold approximately 100 people, only 25 were present on the night of the Program. Thus, while Defendant was displaying the Program, the restaurant was only one-fourth-full. Defendant did not impose a cover charge. Plaintiff does not contend that food or drink prices were increased. There is no evidence that Defendant advertised the program. Further, Plaintiff does not allege that any patrons were present primarily to watch the program rather than to simply play pool.

As the Court observed in *Joe Hand Promotions, Inc. v. Streshly*: "[Defendant] may be the Blackbeard of pirates, but Plaintiff makes no attempt to portray it as such, and to the contrary, the act of piracy attributed to [Defendant] is as routine as they come . . . . ." 655 F.Supp.2d 1136, 1139 (S.D. Cal. 2009). The Court refused to enter default judgment, finding that the plaintiff overreached by seeking damages of $100,875.00. *Id.* Here, Plaintiff seeks a total of $112,200.00.

The Court finds no evidence to support a conclusion that the violation was both willful and for financial gain or commercial advantage. *See National Satellite Sports, Inc. v. Carrabia, et al.*, 2003 U.S. Dist. LEXIS 27198, 2003 WL 24843407 at *4 (*citing Kingvision Pay-Per-View, Ltd. v. Arias*, 2000 U.S. Dist. LEXIS 162, 2000 WL 20973 (N.D. Cal. Jan 7, 2000); *Don King Productions/Kingvision v. Carrera*, 1997 U.S. Dist. LEXIS 9137, 1997 WL 362115 at *2 (N.D. Cal. June 24, 1997) (evidence of willful exhibition for financial gain insufficient when there was no

showing that a cover was charged, that the program was advertised or that food or drink prices were increased, and that the establishments were not filled to capacity.)). The Court declines to exercise its discretion to enhance the Plaintiff's award of damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii). *Miranda*, 2009 U.S. Dist. LEXIS 112415 at 4.

### C. Damages for Conversion

Plaintiff also seeks $2,200.00 in conversion damages, the value of the property at the time of the conversion. (Doc. 11-1 at 20). Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005) (internal quotation marks omitted); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir.1992). "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant." *Gilman v. Dalby*, 176 Cal.App.4th 606, 615 n.1, 98 Cal.Rptr.3d 231 (2009). Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of conversion. *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995); *see also DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182, 1189 (E.D. Cal. 2005) (concluding that the "right to distribute programming via satellite" constituted a "right to possession of personal property" for purposes of a conversion claim under California law).

Here, the evidence supports the request for conversion damages. Plaintiff was granted the exclusive domestic commercial exhibition licensing rights to the program at issue, and thus had the right to possession of the property at the time of the conversion. Defendant did not legally purchase the program. (Doc. 11-1 at pg. 20). Finally, Plaintiff has indicated that Defendant would have been required to pay $2,200.00 if he had ordered the Program from Plaintiff. *Id.* Thus, Plaintiff is entitled to recover the sublicensing fee conversion damages in the amount of $2,200.00.

### RECOMMENDATIONS

Based on consideration of the declarations, pleadings and exhibits to the present application,

the Court RECOMMENDS as follows:

    1.       Plaintiff's motion for default judgment be GRANTED in part;

    2.       Judgment be entered in this action against Defendant Ruben Garcia Aranda a/k/a Ruben Garcia d/b/a/ El Cachanilla Pool House; and

    3.       Damages in the amount of $3,200.00 be awarded as follows:

           a.       For the violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), the sum of $1,000.00;

           b.       For the conversion of Plaintiff's property, the sum of $2,200.00.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304.  Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

   IT IS SO ORDERED.

**Dated:**   **May 9, 2013**            /s/ **Barbara A. McAuliffe**
                                          UNITED STATES MAGISTRATE JUDGE